UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IBEW LOCAL UNION 320, AFL-CIO,

                              Petitioner,

        v.

ROSETON GENERATING LLC, *and*
CASTLETON COMMODITIES LLC,

                              Respondents.

No. 22-CV-3457 (KMK)

OPINION & ORDER

Appearances:

Mark C. Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
Poughkeepsie, NY
*Counsel for Petitioner*

Daniel D. Schudroff, Esq.
Mina M. Wood, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Respondents*

KENNETH M. KARAS, District Judge:

        Petitioner IBEW Local Union 320, AFL-CIO ("IBEW Local Union 320" or "Petitioner")

has filed a Petition (the "Petition"), pursuant to Section 301 of the Labor Management Relations

Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185.  (Pet. to Confirm Arb. Award ("Pet.")

(Dkt. No. 1).)  Respondents Roseton Generating LLC ("Roseton Generating") and Castleton

Commodities LLC ("Castleton," collectively, "Respondents") timely filed their opposition to the

Petition.  (Resp.'s Answer to Pet. to Confirm Arb. Award ("Resp.'s Answer") (Dkt. No. 11).)

For the following reasons, the Motion is granted, except as to Petitioner's request for attorney

fees, costs, and expenses.

I.  Background

A.  Factual Background

1.  The Parties and Their Agreement

IBEW Local Union 320 is a labor organization representing electrical workers in New York.  (Pet. ¶ 1.)  Respondents currently operate the Roseton Generating Station ("Roseton Plant") in Newburg, New York.  (Pet. ¶ 2; Pet. Ex. D ("Tillem Op."), at 2 (Dkt. No. 1-4).)  However, prior to 2013, Roseton Plant was owned by Dynegy Northeast Generation Inc. ("Dynegy").  (Tillem Op. at 2.)  Petitioner and Dynegy entered into a collective bargaining agreement effective February 1, 2008 through January 31, 2012 (the "2008 Agreement").  (*Id*.)  This agreement was later extended by a memorandum of agreement to December 31, 2013.  (*Id*.)

> The 2008 Agreement contained a provision governing the sale of the Roseton Plant:
>
> An absolute precondition to the sale, lease or transfer of any of the DNE power generation plants, or any substantial part thereof, is that any purchaser, transferee, or lessee thereof shall agree to, and become party to, and bound by all the terms, conditions, and obligations of this DNE Power Generation Plants Agreement . . . .

(*Id*. at 3.)  In addition, the 2008 Agreement incorporates "supplemental agreements," stating:

> The "Supplemental Agreements" which are attached as appendices to the Agreement are by reference considered to be part of this Agreement and are by reference considered to be part of this Agreement and reference herein to a year or an Exhibit . . . refers to the applicable Supplemental Agreement . . . .  No deletions, additions, or changes in said Supplemental Agreements shall be made without the mutual written consent of the Company and the Union.

(*Id*.)  Finally, one supplemental agreement to the 2008 Agreement included the following provision entitling employees to a "social security supplement":

> Currently the Social Security supplemental payments are available for retirees between 60 and 65 and are paid up to a maximum of 24 such payments commencing on or after age 60 but do not exceed age 65.  Effective October 1, 1998, such payments will be available for retirees between ages 60 and their Normal Retirement Age under the Social Security Act and will be paid up to a

2

maximum of 24 payments commencing on or after age 60 but not beyond Normal
Retirement Age under such Act.

(*Id*. at 3–4.)

In May 2013, Castleton purchased the Roseton Plant from Dynegy.  (*Id*. at 2.)  As a
result, Petitioner and Castleton entered into a collective bargaining agreement for the period May
1, 2013 to May 31, 2015.  (*Id*.)  Castleton and Petitioner subsequently negotiated a successor
agreement for the period June 1, 2015 to May 31, 2020 (the "2015 Agreement").  (*Id*.; Pet. ¶ 4.)
The 2015 Agreement contained almost the exact same provisions as the 2008 Agreement
excerpted above.  (*See* Pet. ¶ 5–7; Pet. Ex. A ("2015 Labor Agreement"), at 1, 9, 10 (Dkt. No. 1-
1).)  In 2016, Castleton transferred ownership of the Roseton Plant to Roseton Generating.
(Tillem Op. 2.)  Petitioner and Roseton Generating entered into Memorandum of Agreement
effective October 1, 2020 through May 31, 2025 (the "2020 Agreement").  (*Id*.; Pet. ¶ 4; *see also*
Pet. Ex. B ("2020 MOA") (Dkt. No. 1-2).)  In the 2020 Agreement, the parties "agree[d] to
amend the 2015 Labor Agreement," delineating several amendments and changes to
supplemental agreements in the 2015 Agreement.  (Pet. ¶ 9; *see also* 2020 MOA 1.)  Of
relevance, the 2020 Agreement added a "[n]ew [b]ridge to Medicare provision" for retirees.
(2020 MOA 2; *see also* Tillem Op. 2–3 ("The [2020 Agreement] extended the [2015 Agreement]
but also added retiree medical coverage as a new benefit.")

### 2.  Arbitration Proceedings

In 2019 and 2020, grievances were filed on behalf of Peter Melnik, James LeBlanc,
Kevin Tighe, and Warren Ward (individually, "grievant" and collectively, the "grievants")
alleging that Castleton and Roseton Generating failed to pay them a social security supplement,
as required in the supplemental agreement.  (*See* Pet. ¶ 10; Tillem Op. 4; Pet. Ex. C
("Grievances") (Dkt. No. 1-3).)  Respondents denied all four grievances, (Pet. ¶ 11; *see also*

Grievances), and the parties agreed to consolidate the grievances before an arbitrator as dictated by the 2015 Agreement procedure, (*see* Pet. ¶¶ 8, 12).

On April 1, 2021, the parties went before Arbitrator Jack Tillem ("Arbitrator Tillem" or the "arbitrator") to present evidence and hear argument on the following issue: "What, if any retirement Social Security supplemental benefit is the Employer required to pay [the grievants] . . . ?" (*Id*. ¶ 13.)  The arbitrator also heard arguments related to additional retiree medical coverage for grievants Melnik and LeBlanc.  (*Id*.)  On August 26, 2021, Arbitrator Tillem sustained the grievances, directing the parties to confer on the remedy within 90 days of the decision.  (Tillem Op. 14.)  Arbitrator Tillem also denied Melnik and LeBlanc's claims for retiree medical coverage.  (*Id*.)

As it relates to the social security supplemental benefits, the arbitrator highlighted the extent of his authority to arbitrate the issue, pointing to the 2015 Agreement which stated that the arbitrator "shall have no authority to add to, detract from, alter, amend[,] or modify any provision of this Agreement."  (*Id*. at 8.)  Respondents argued that any supplemental agreements are not inherently incorporated into the 2015 Agreement, but must be explicitly referenced in the body of the agreement to have binding effect.  (*Id*. at 9.)  Arbitrator Tillem disagreed, noting that "the parties over the years have agreed to amend, modify[,] or delete a substantial number of supplemental agreements, reference to which is made in the main body" of the 2015 Agreement, and that it would be "difficult to believe" that without such modifications, "they are all defunct." (*Id*.)  Additionally, the arbitrator emphasized that the parties, "represented by knowledgeable and experienced negotiators . . . did not, contract after contract, cut and paste the document . . . so that it would embody what they agreed to and *only* what they agreed to."  (*Id*.)  Finally, the arbitrator referenced a provision in the 2015 Agreement that stated that "[n]o deletions,

additions[,] or changes in [supplemental agreements] shall be made without the mutual written consent of" Petitioner and Respondents.  (*Id*. at 10.)  As such, and cognizant of the limitations of his arbitration authority, Arbitrator Tillem concluded that he was unable disregard the social security supplement provision, and sustained the grievances.  (*Id*. at 13.)

### B.  Procedural History

On April 28, 2022, Petitioner filed the instant Action requesting confirmation of the August 26, 2021 Opinion and Award by Arbitrator Tillem and attorney fees and costs.  (Pet. 6)  On May 3, 2022, Petitioner filed the instant Motion and ancillary papers.  (Not. of Pet. (Dkt. No. 3); Mem. in Supp. of Pet. ("Pet. Mem.") (Dkt. No. 4).)

After an extension of time, (*see* Dkt. No. 7), Respondents filed an Answer to the Petition with ancillary papers on June 8, 2022.  (Resp.'s Answer; Resp.'s Mem. in Opp. to Pet. ("Resp. Mem.") (Dkt. No. 12); Aff. of Daniel D. Schudroff in Supp. of Resp.'s Opp. ("Schudroff Aff.") (Dkt. No. 13).)  In their Answer, Respondents asked the Court to deny the Petition.  (Resp.'s Answer 4.)  Petitioner filed a reply on June 22, 2022.  (Reply Mem. in Supp. of Pet. ("Pet.'s Reply") (Dkt. No. 14).)  After seeking leave from the Court, (*see* Dkt. No. 16), Respondents filed a sur-reply on June 24, 2022, (*see* Resp.'s Sur-Reply in Opp. of Pet. ("Resp. Sur-Reply") (Dkt. No. 17)).

## II.  Discussion

### A.  Standard of Review

"Section 301 of the [LMRA], 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  Federal court review of arbitral awards is "severely limited so as not to frustrate the twin goals of

arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."

*United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270,

274–75 (2d Cir. 2015) (quotation marks and citation omitted).  "The federal policy in favor of

enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes."

*N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)

(citation omitted).  Because the LMRA "embodies a 'clear preference for the private resolution

of labor disputes,'" *Nat'l Football League Mgmt. Council v. Nat'l Football League Players*

*Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers v. Niagara Mohawk*

*Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)), judicial review of arbitral awards in this context

is "among the most deferential in the law," *id*. at 532.

Confirmation of an arbitration award is thus generally "a summary proceeding that

merely makes what is already a final arbitration award a judgment of the court[.]"  *D.H. Blair &*

*Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks and citation omitted).

The Court's task is not to reconsider the merits of the dispute; after all, the parties bargained for

the arbitrator's view of the facts and the law.  *Nat'l Football League Mgmt. Council*, 820 F.3d at

536.  Instead, the Court's role is "simply to ensure that the arbitrator was 'even arguably

construing or applying the contract and acting within the scope of his authority' and did not

'ignore the plain language of the contract.'"  *Id*. at 537 (quoting *United Paperworkers Int'l*

*Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Major League Baseball Players Ass'n v.*

*Garvey*, 532 U.S. 504, 509 (2001) ("It is only when the arbitrator strays from interpretation and

application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that

his decision may be unenforceable." (quoting *United Steelworkers of Am. v. Enter. Wheel & Car*

*Corp.*, 363 U.S. 593, 597 (1960))).  "The arbitrator's rationale for an award need not be

explained, and the award should be confirmed if a ground for the arbitrator's decision can be

inferred from the facts of the case.  Only a barely colorable justification for the outcome reached

by the arbitrators is necessary to confirm the award."  *D.H. Blair & Co.*, 462 F.3d at 110

(quotation marks and citations omitted).

Given this deference and limited review, an arbitral award will normally be vacated "only

upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more

rarely, if [the court] find[s] a panel has acted in manifest disregard of the law."  *Porzig v.*

*Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

B.  Analysis

1.  Petition to Confirm Arbitration Award

Petitioner argues that the Award should be confirmed because it complies with the FAA.

(*See generally* Pet.; Pet. Mem.)  Respondents oppose confirmation of the Award because "there

is no case or controversy before the Court" and "[i]t is undisputed that Respondent complied

with the Award as evidenced through the Stipulation of Settlement entered into by Petitioner and

Respondent."  (Resp. Mem. 3–7.)  In the alternative, Respondent asks the Court to "expressly

limit[] [the Order] to the grievances that were the subject of Arbitrator Tillem's Award without

*prospective* application to future disputes between the parties."  (Resp. Sur-Reply 3.)

On the limited review appropriate, the Court confirms the Award.  *See Zeiler v. Deitsch*,

500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation . . . is a summary proceeding . . . , which is not

intended to involve complex factual determinations, other than a determination of the limited

statutory conditions for confirmation or grounds for refusal to conform . . . . At the confirmation

stage, the court is not required to consider the subsequent question of compliance.")  Here, it is

clear that neither party alleges one of the four bases precluding the Court from confirming this

judgment:  (1) the award was not "procured by corruption, fraud or undue means"; (2) there was no "evident partiality or corruption" by the arbitrator; (3) the arbitrator was not "guilty of misconduct"; and (4) the arbitrator did not "exceed[] [his] powers, or so imperfectly execute[] them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(1)–(4).  There is also no allegation of, nor has the Court found a basis to conclude, that the arbitrator "acted in manifest disregard of the law."  *Porzig*, 497 F.3d at 139.

Respondents do not substantively oppose Arbitrator Tillem's Award or otherwise object to the Arbitrator's Opinion. (*See generally* Resp. Mem.)  Instead, Respondents argue that there is no case or controversy because Respondents have already complied with the award, and that "Petitioner's sole motivation in filing this specious Petition is to bolster its arguments in subsequent disputes between the parties."  (*Id*. at 3–6.)  However, courts in the Second Circuit have repeatedly dismissed arguments based on this theory, finding that a district court's role at this stage is to "merely make[] what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); *see also Ozkaptan v. Citigroup, Inc*, No. 20-CV-747, 2020 WL 6546239, at *2 n.2 (S.D.N.Y. Nov. 6, 2020) ("[E]ven if [the respondent] has already complied with the [a]ward, the petition to confirm would not be moot."); *Schusterman v. Mazzone*, No. 19-CV-212, 2019 WL 2547142, at *4 (S.D.N.Y. June 19, 2019) (finding that a respondent's "payment does not negate the right of the prevailing party . . . to seek judicial confirmation of the arbitral decision"); *Nat'l Casualty Company v. Resolute Reinsurance Co.*, No. 15-CV-9440, 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016) (disagreeing that an order confirming an arbitration award "would not have any legal purpose" because the argument "misunderstands . . . the quasi-appellate nature of the proceeding and the parties' independent right to such confirmation").  Contrary to Respondents' arguments, Petitioner's motivations for

seeking the confirmation are irrelevant to the resolution this Petition.  (*See generally* Resp.

Mem.)  As such, and as required by established precedent and federal law, Petitioner is entitled

to confirmation of the arbitration award.

### 2.  Attorney Fees and Costs

Petitioner also seeks to recover reasonable attorney fees and costs incurred by bringing

this Petition.  (Pet. 6).  Petitioner argues that it is entitled to attorney fees and costs because

"Respondents are refusing to adhere to Arbitrator Tillem's Award that the social security

supplement provision of the collective bargaining agreement between them is an existing and

fully enforceable benefit of the Respondent's employees."  (Pet. Reply. 5–6.)

"[I]n a federal action, attorney's fees cannot be recovered by the successful party in the

absence of statutory authority for the award."  *Trs. of N.Y.C. Dist. Council of Carpenters Pension*

*Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeymen Retraining, & Indus. Fund*

*v. Mahi Painting, Inc.*, No. 22-CV-6496, 2022 WL 7584364, at *4 (S.D.N.Y. Oct. 13, 2022)

(quoting *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47

(2d Cir. 1985)).  "Section 301 of the LMRA does not provide for recovery of attorney[] fees."

*Id*.  "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award

attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper

when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's

decision without justification."  *Abondolo v. H. & M.S. Meat Corp.*, No. 07-CV-3870, 2008 WL

2047612, at *4 (S.D.N.Y. May 12, 2008) (quotation marks omitted) (quoting *N.Y. City Dist.*

*Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-CV-5122, 2003 WL

22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

Petitioner is correct that courts have awarded attorney fees and costs where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997) (quotation marks and citation omitted); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-CV-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorney fees and costs to a petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-CV-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorney fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator"). However, Respondents have in fact abided by Arbitrator Tillem's award, counselling against awarding attorney fees and costs in this Action.

Arbitrator Tillem's award specifically sustained "[t]he grievances of Peter Melnick, James LeBlanc, Keven Tighe and Warren Ward seeking payment of the Social Security supplement," not the grievances of an unidentified class of Union members. (Tillem Op. 14.) The Opinion directed the parties to "confer on how the remedy should be structured." (*Id.*) In February 2022, all Parties entered into a stipulation of settlement remedy, where Respondents agreed to pay each grievant a one-time lump sum payment of $38,570.00 within 15 days of Arbitrator Tillem signing the agreement or the date the last Grievant provides payment details to Respondents. (*See* Schudroff Aff. Ex. B (Dkt. 13-2).) No party has alleged that Respondents failed to pay the supplement payments to the grievants, or otherwise refused to abide by this agreement as it relates to the grievants. (*See* Pet. Mem.; Resp. Mem.) Instead, Petitioner asks

this Court to read an obligation into Arbitrator Tillem's opinion that does not exist, asking Respondents to apply the precedent of an arbitrator's opinion to future grievances.  (*See* Pet. Reply. 5–6.)  Arbitrator Tillem is clear in this Opinion that his ruling relates to the grievants at issue.  (*See* Tillem Op. 4 (identifying each grievance filed on behalf of each individual grievant, rather than a class of grievants); *id*. at 13 (sustaining the grievances and directing Respondent to pay each grievant, rather than a class of grievants); *id*. at 14 (awarding each grievant payment of the Social Security supplement).)

Petitioner is free to introduce Arbitrator Tillem's opinion as evidence in future arbitration proceedings if the arbitration rules allow.  However, given that Respondents have fulfilled their obligations to these grievants as required by the arbitrator, Petitioner's request for attorney fees and costs is denied.

### III.  Conclusion

For the reasons set forth herein, the Court confirms the Award, but denies the request for attorney fees, costs, and expenses incurred in confirming the Award.  The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 1), enter judgment for Petitioner, and close the case.

SO ORDERED.

DATED:  November 23, 2022
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge